**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

**DAVID ROBERT BENTZ, # S-03210,** )
)
**Plaintiff,** )
)
**vs.** ) **Case No. 13-cv-1280-MJR**
)
**ROBERT HUGHS, ZIGLIER,**[1] )
**SERGEANT DUNN, SERGEANT SHURZT,** )
**RICK HARRINGTON, SUSAN HILL,** )
**C/O LINDENBERG, M.A. MINOR,** )
**C/O DAVIS, E. QUAND,** )
**J. BERDNER, C/O STEVE,** )
**and UNKNOWN PARTIES** )
**(John Doe Correctional Officers #1-6,**[2] )
**and John Doe Internal Affairs Officer #7),** )
)
**Defendants.** )

# MEMORANDUM AND ORDER

**REAGAN, District Judge:**

Plaintiff is currently incarcerated at Menard Correctional Center ("Menard"), where he is serving a life sentence for murder. He has brought this *pro se* civil rights action pursuant to 42 U.S.C. § 1983, alleging that Defendants have conspired to deprive him of adequate clothing and bedding, and taken other actions in retaliation against him for filing complaints and lawsuits against Menard staff.

---

[1] Plaintiff's motion to substitute John Doe Defendants (Doc. 7) notes that the correct spelling of this Defendant's name is "Ziegger." The Clerk shall be directed to make this correction, and the Court shall use Plaintiff's corrected spelling herein.

[2] In Plaintiff's motion to substitute John Doe Defendants (Doc. 7), he identifies John Doe C/O #5 as J. Phillip, and John Doe C/O #6 as Jason Rednour. His second motion to substitute (Doc. 8) identifies John Doe C/O #4 as J. Hood. The Clerk shall be directed to make the appropriate substitutions, and these Defendants shall be referred to herein by name.

**The Complaint**

According to Plaintiff's reported litigation history, he has a total of six previously-filed federal lawsuits pending in the Illinois federal district courts (Doc. 1, pp. 2-3). Two of those pending cases are in this district: *Bentz v. Bledsol, et al.*, Case No. 13-cv-573-JPG-DGW (filed June 17, 2013); and *Bentz v. Atchinson, et al*., Case No. 13-cv-1259-JPG-PMF (filed Dec. 5, 2013). One of the defendants in Case No. 13-cv-573 is "J. Berner." Plaintiff asserts that this is the same individual he names as a Defendant in the instant case, although he spells the name here as "J. Berdner" (Doc. 1, p. 4).

On September 20, 2013, while Plaintiff was returning to his cell from the chow hall, Defendant Berdner spit in his face and called him a "bitch" (Doc. 1, p. 4). Plaintiff asserts that he did not provoke Defendant Berdner in any way. Later that day, while conducting a security check on Plaintiff's gallery, Defendants Quand and Steve made verbal threats to Plaintiff in reference to his filing of lawsuits and complaints against Menard correctional officers. Plaintiff reported these incidents to Defendant Sgt. Dunn, but he refused to talk to Plaintiff about the matter. Plaintiff filed an emergency grievance to Defendant Harrington (the warden) on September 25.

Two days later, on September 27, 2013, Plaintiff was told he would be moved to a different cell, and to pack up all his property. Plaintiff packed everything; this included all his clothing other than what he had on, plus his linens, towels, and legal materials. Defendants Quand, Berdner, Miner, Steve, and John Does #1 and #2 then confiscated all these items. Plaintiff protested that he needed his legal materials for ongoing litigation, and had been left with only the clothes he was wearing. These Defendants responded that they did not care, and he should file another lawsuit because he was not going to get anything; adding that if he did sue

there would be repercussions (Doc. 1, p. 5).

Defendants Quand, Miner, Steve, and John Doe #1 threatened to assault Plaintiff as they walked to the new cell house. Defendant Miner then shoved Plaintiff hard into the door jamb to the East cell house, injuring Plaintiff's right leg (Doc. 1, p. 6). Defendants Berdner, Quand, Steve, Dunn, and John Does #1 and #2 observed this assault, and followed it up by surrounding Plaintiff and pushing him back and forth while threatening to beat him because he had filed lawsuits. Plaintiff was then escorted to his new cell. On the way, he passed by the personal property dumpster, where he saw that all of his legal material, clothing, and other items had been thrown away (Doc. 1, p. 6).

After Plaintiff arrived in the new cell, he asked the gallery officer (Defendant John Doe #3) if he could have some clothing and bedding. The Defendant replied that Plaintiff should not have let the other officers take his property, and there was nothing he could do, adding, "What did you expect to happen when you filed your lawsuit?" (Doc. 1, p. 7). Plaintiff repeated his request to Defendant C/O J. Hood (referred to in the complaint as John Doe. #4), who refused to do anything. Plaintiff sent in a clothing request form the same day (September 27) but never got a response.

On October 9, 2013, Plaintiff sent a letter to his family asking them to contact prison officials to request clothing and bedding for him. On October 14, after speaking to Defendant Hill (counselor) about the lack of clothing/bedding, he filed a grievance directed to her as she requested.

On November 14, in response to an email from Plaintiff's family, Defendant C/O Lindenberg came to Plaintiff's cell and told him not to write anybody else or file more grievances about the lack of clothing or sheets. Plaintiff filed another grievance to Defendant

Hill over this incident. The next day, Plaintiff's family received a written response to their inquiry, which stated that the cell house major had checked into the matter, and that "Inmate Bentz has a mattress, two sheets, pillow/pillow case, blanket, state blue pants and shirt, t-shirt and jacket" (Doc. 1, p. 8). However, this statement was not true; he had no linens, blanket, or jacket. Plaintiff did not speak to the cell house major (Defendant Ziegger) until November 20, when he and Defendant Shurzt made rounds. He requested them to provide him with the needed items, but they refused to address the problem. Plaintiff also asked Defendants Phillip and Rednour (identified in the complaint as John Does #5 and #6) for bedding and clothing during October and November. As with the other Defendants, they refused to provide Plaintiff with these items. He asserts that this ongoing denial of necessary clothing and bedding was a result of the Defendants' conspiracy to retaliate against him for his pursuit of the aforementioned lawsuits and institutional grievances (Doc. 1, p. 8).

As a result of the refusal of Defendants John Doe #3, Hood, Lindenberg, Ziegger, Shurzt, Phillip, and Rednour to replace any of the clothing that was confiscated and destroyed by Defendants Quand, Berdner, Miner, Steve, Dunn, and/or John Does #1 and #2, Plaintiff has been without adequate attire (jacket, hat, gloves) to protect him from the winter weather. Nor has he had even one change of clothing to put on while he washes the one set of clothes he still possesses. He thus has had to suffer exposure to cold temperatures each time he goes outside to reach the chow hall, and has lost the opportunity for outdoor exercise or recreation in the yard because he has no coat (Doc. 1, pp. 8-10). The lack of outdoor exercise has caused him to suffer "serious health issues and chronic depression" (Doc. 1, p. 11). Aside from the weather-related problems, Plaintiff asserts that the prolonged lack of clothing and linens have deprived him of the ability to maintain basic hygiene or minimal personal cleanliness (Doc. 1, p. 11).

In addition, Plaintiff raises claims of civil conspiracy to interfere with Plaintiff's ability to pursue his litigation in the federal courts and in violation of 42 U.S.C. § 1985, and state tort claims of negligence and assault/battery (Doc. 1, pp. 4, 12). He seeks an injunction requiring prison officials to provide him with adequate clothing and bedding, and requests damages (Doc. 1, p. 13).

**Merits Review Pursuant to 28 U.S.C. § 1915A**

Under § 1915A, the Court is required to conduct a prompt threshold review of the complaint, and to dismiss any claims that are frivolous, malicious, fail to state a claim on which relief may be granted, or seek monetary relief from an immune defendant.

Accepting Plaintiff's allegations as true, the Court finds that Plaintiff has articulated the following colorable federal claims, as well as the listed state-law claims which may proceed for further consideration under this Court's supplemental jurisdiction (*see* 28 U.S.C. § 1367(a):

**Count 1:** Retaliation claim against Defendant Berdner for spitting in Plaintiff's face on September 20, 2013 after Plaintiff sued him in a previous federal civil rights case;

**Count 2:** State tort assault and battery claim against Defendant Berdner for the September 20, 2013 spitting incident;

**Count 3:** Excessive force claim against Defendant Miner for shoving Plaintiff into a door frame on September 27, 2013, and against Defendants Berdner, Quand, Steve, Dunn, and John Does #1 and #2 for failing to protect Plaintiff from Defendant Miner's action and for pushing Plaintiff;

**Count 4:** State tort assault and battery claim against Defendants Miner, Berdner, Quand, Steve, Dunn, and John Does #1 and #2, for the conduct described in Count 3;

**Count 5:** Retaliation claim against Defendants Berdner, Quand, Miner, Steve, Dunn, and John Does #1 and #2 for confiscating and destroying Plaintiff's clothing, bedding, legal materials and documents, and other personal effects on September 27, 2013, after Plaintiff sued and filed complaints against Defendant Berdner and other Menard officials;

**Count 6:** Civil conspiracy claim under § 1983 against Defendants Berdner, Quand,

Miner, Steve, Dunn, and John Does #1 and #2, for acting together in an attempt to prevent Plaintiff from pursuing his legal actions against prison officials, by destroying his legal materials and documents on September 27, 2013;

**Count 7:** Retaliation claim against Defendant John Doe #3, and Defendants Hood, Lindenberg, Ziegger, Shurzt, Phillip, and Rednour, for denying Plaintiff replacement clothing and bedding from September 27 through at least November 2013, because of his activity in filing lawsuits and complaints against Menard staff;

**Count 8:** Eighth Amendment deliberate indifference claims for denying Plaintiff adequate clothing to protect him from the cold, thus depriving him of the opportunity for outdoor exercise, and for failing to provide sufficient clothing and linens to meet his basic hygiene needs, from September 27 through at least November 2013, against Defendant John Doe #3, and Defendants Hood, Lindenberg, Ziegger, Shurzt, Phillip, and Rednour;

**Count 9:** State law tort claim for negligence for the conduct described in Count 8, against Defendant John Doe #3, and Defendants Hood, Lindenberg, Ziegger, Shurzt, Phillip, and Rednour.

**Claims and Defendants to be Dismissed**

Plaintiff has failed to state viable claims for denial of access to the courts **(Count 10)**, deprivation of his property without due process **(Count 11)**, or conspiracy in violation of 42 U.S.C. § 1985 **(Count 12)**.

**Count 10- Access to Courts**

Although Plaintiff may proceed on his claim that certain Defendants conspired to hinder his litigation activities by destroying his legal documents, he has not stated an independent claim for denial of his access to the courts. Although he was deprived of these documents and other legal resource materials, Plaintiff does not allege that he suffered any actual or potential limitation on his ability to pursue any of his pending lawsuits or any other meritorious claim. Actual or threatened detriment is an essential element of a § 1983 action for denial of access to the courts. *Howland v. Kilquist*, 833 F.2d 639, 642-43 (7th Cir. 1987); *Hossman v. Sprandlin*, 812 F.2d 1019, 1021-22 (7th Cir. 1987). Plaintiff was obviously able to

file the instant action, despite the Defendants' destruction of his papers. In the absence of any suggestion that Plaintiff suffered a detriment to his litigation activities, he cannot maintain an access to courts claim. Therefore, Count 10 shall be dismissed without prejudice.

**Count 11 – Deprivation of Property Without Due Process**

Plaintiff has a right under the Fourteenth Amendment to be free from deprivations of his property by state actors without due process of law. However, to state a claim under the due process clause of the Fourteenth Amendment, Plaintiff must establish a deprivation of liberty or property *without due process of law*. If the state provides an adequate remedy, Plaintiff has no federal civil rights claim. *Hudson v. Palmer*, 468 U.S. 517, 530-36 (1984) (availability of damages remedy in state claims court is an adequate, post-deprivation remedy). The Seventh Circuit has found that Illinois provides an adequate post-deprivation remedy in an action for damages in the Illinois Court of Claims. *Murdock v. Washington*, 193 F.3d 510, 513 (7th Cir. 1999); *Stewart v. McGinnis*, 5 F.3d 1031, 1036 (7th Cir. 1993); 705 ILL. COMP. STAT. 505/8 (1995). Thus, if Plaintiff wishes to pursue a separate claim for the taking of his property (other than the retaliation and conspiracy claims outlined above), he must do so in the Court of Claims. The civil rights claim in Count 11 shall be dismissed with prejudice.

**Count 12 - 42 U.S.C. § 1985 Conspiracy**

Under the intracorporate conspiracy doctrine, a claim for conspiracy to violate an individual's civil rights arising under 42 U.S.C. § 1985 "cannot exist solely between members of the same entity." *Payton v. Rush Presbyterian-St. Luke's Med. Ctr.*, 184 F.3d 623, 632 (7th Cir. 1999). All of the Defendants are members (employees or agents) of the same entity, the Illinois Department of Corrections, and it appears that they were all working in the IDOC's interest. Therefore, the Defendants cannot be sued under § 1985 conspiracy. *See id. See also Wright v.*

*Ill. Dep't Of Children and Family Servs.*, 40 F.3d 1492, 1508 (7th Cir. 1994).[3] Further, "the function of a conspiracy claim under 42 U.S.C. § 1985(3) is to 'permit recovery from a private actor who has conspired with state actors.'" *Turley v. Rednour*, 729 F.3d 645, 649 n.2 (7th Cir. 2013) (quoting *Fairley v. Andrews*, 578 F.3d 518, 526 (7th Cir. 2009)). No such conspiracy involving private actors is described in the instant complaint. Accordingly, Count 12 shall be dismissed with prejudice.

**Defendants Hughs, Hill, Davis, and John Doe #7**

The only mention of Defendants Hughs and Davis in the complaint is in Plaintiff's general introductory paragraphs regarding several of his claims (Doc. 1, pp. 6, 8, 11). His factual allegations do not describe any actions taken by either of these individuals relating to any of the claims of constitutional deprivations.

In order to state a claim against a Defendant, a plaintiff must describe what each named Defendant did (or failed to do), that violated the plaintiff's constitutional rights. Conclusory statements such as those relied on by Plaintiff in his references to Defendants Hughs and Davis are insufficient to state a viable claim. *See Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009) (courts "should not accept as adequate abstract recitations of the elements of a cause of action or conclusory legal statements"). Further, § 1983 creates a cause of action based on personal liability and predicated upon fault; thus, "to be liable under [Section] 1983, an individual defendant must have caused or participated in a constitutional deprivation." *Pepper v. Village of Oak Park*, 430 F.3d 809, 810 (7th Cir. 2005) (citations omitted). Because neither Defendant Hughs nor Defendant Davis appears to have had any personal involvement in the alleged violations of Plaintiff's constitutional rights (or in the state tort claims), they shall be

[3] While *Wright* focused on corporate managers, nothing in its reasoning precludes application of this doctrine to supervisors and subordinates in a government entity, as long as all are working in the entity's interest. *Id.* at 633.

dismissed from the action without prejudice.

Likewise, Plaintiff does not claim that either Defendant Hill or Defendant John Doe #7 (an Internal Affairs officer) personally participated in any of the actions of which he complains. These Defendants were recipients of one or more grievances Plaintiff filed over the actions and/or inactions of other prison staff (Doc. 1, pp. 5, 7, 8, 10. This, however, does not make Defendant Hill or Defendant John Doe #7 liable for the alleged violations described in Plaintiff's grievances. Even if these Defendants did nothing in response to Plaintiff's complaints, the processing or mishandling of grievances "by persons who otherwise did not cause or participate in the underlying conduct states no claim." *Owens v. Hinsley*, 635 F.3d 950, 953 (7th Cir. 2011). *See also Grieveson v. Anderson*, 538 F.3d 763, 772 n.3 (7th Cir. 2008); *George v. Smith*, 507 F.3d 605, 609 (7th Cir. 2007); *Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996). Accordingly, Defendants Hill and John Doe #7 shall be dismissed with prejudice.

**Defendant Harrington**

Plaintiff has similarly failed to allege anywhere in the complaint that Defendant Harrington (the warden) was personally responsible for any deprivation of his constitutional rights. Further, a warden cannot be held liable for the unconstitutional acts of prison employees under his supervision, because the doctrine of *respondeat superior* is not applicable to § 1983 actions. *Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2001) (citations omitted). Accordingly, Plaintiff has not stated any constitutional claim against Defendant Harrington.

However, because Plaintiff is seeking injunctive relief, Defendant Harrington shall remain in the action for the purpose of implementing any injunctive relief to which Plaintiff may ultimately be entitled if he should prevail. *See Gonzalez v. Feinerman*, 663 F.3d 311, 315

(7th Cir. 2011) (proper defendant in a claim for injunctive relief is the government official responsible for ensuring any injunctive relief is carried out).

**Pending Motions**

Plaintiff's motion for recruitment of counsel (Doc. 3) shall be referred to the United States Magistrate Judge for further consideration.

Plaintiff's first and second motions to substitute John Doe Defendants (Docs. 7 and 8) are **GRANTED**; the Clerk shall be directed to make the appropriate corrections and substitutions.

Plaintiff's motion for contempt of court order (Doc. 6), however, shall be denied. Plaintiff complains that the Trust Fund Officer at Menard has made payments toward his federal court filing fees that exceeded the amount he should have been assessed under the orders granting him leave to proceed *in forma pauperis* ("IFP") in his earlier cases. Specifically, he states that in December 2013, payments totaling $20.00 were deducted from his inmate trust fund account and sent to the Clerks of Court for this district (two $2.00 payments), the Central District ($2.00 and $10.00), and the Northern District ($4.00) (Doc. 6, p. 2). As noted above, Plaintiff has two prior cases pending in this District (*Bentz v. Bledsol, et al*., Case No. 13-573-JPG-DGW, and *Bentz v. Atchinson, et al*., Case No. 13-cv-1259-JPG-PMF). He also has two cases each pending in the Central and Northern Districts (Doc. 1, pp. 2-3).

Plaintiff claims that he had income of $50.00 in the month of November 2013, and complains that the total $20.00 assessment for court fees improperly exceeded 20% of his income (Doc. 6, p. 2). Under this Court's order granting Plaintiff's motion to proceed IFP, he must "make monthly payments of 20% of the preceding month's income credited to Plaintiff's prison trust fund account (including all deposits to the inmate account from any source) until the

$350.00 filing fee is paid in full" (Doc. 5); *see also* 28 U.S.C. § 1915(b)(2).

In fact, Plaintiff's trust fund statement shows that he had a total income of $60.00 for November 2013 – a $50.00 payment from a family member plus the $10.00 payroll from Plaintiff's prison job (Doc. 6, p. 3). It is true that 20% of $60.00 ($12.00) is less than the $20.00 in court fees that was deducted from Plaintiff's account. However, it appears that both Plaintiff and the Trust Fund Officer at Menard have misapprehended the manner in which court fees are to be deducted and paid from a prisoner's account when he owes multiple fees for several different lawsuits.

The Seventh Circuit has instructed that "the fees for filing the complaint and appeal cumulate. Otherwise a prisoner could file multiple suits for the price of one . . . ." *Newlin v. Helman*, 123 F.3d 429, 436 (7th Cir. 1997), *overruled in part on other grounds by Lee v. Clinton*, 209 F.3d 1025 (7th Cir. 2000), *and Walker v. O'Brien*, 216 F.3d 626 (7th Cir. 2000). The same holds true where, as in Plaintiff's situation, an inmate has brought several distinct lawsuits. A prisoner who files one suit must remit 20% of his monthly income to the Clerk of the Court until his fees have been paid for that case; a prisoner who files a suit and an appeal (or a second suit) must remit 40%; and so on. *Newlin*, 123 F.3d at 436. "Five suits or appeals mean that the prisoner's entire monthly income must be turned over to the court until the fees have been paid." *Id.*

Based on the information Plaintiff provided on his litigation history, he already had six pending cases before he filed the instant case. This brings his total to seven pending lawsuits. He should have been assessed payments of 20% of his monthly income *for each case*, in order to comply with the directive in *Newlin*. Of course, the 20% payments can only be assessed for five cases at any given time; thus payments toward the fees for case number six

must wait until payment is completed for one earlier case. The same is true for the instant case (number seven).

The Menard Trust Fund Officer has been ordered to deduct the initial partial filing fee of $15.98 for this case from Plaintiff's account (Doc. 5), and this payment should be made without delay. Collection of the remaining monthly payments toward the filing fee for this case (20% of Plaintiff's income pursuant to 28 U.S.C. § 1915(b)(2)) must necessarily be deferred until he has paid off the filing fee for two of his five earlier-filed cases.

Because the Menard Trust Fund Officer has not overpaid Plaintiff's court fees, but in fact has collected less from his account than what he should have been assessed, Plaintiff's motion for contempt of court order (Doc. 6) is **DENIED**.

The Clerk is **DIRECTED** to mail a copy of this order to the Trust Fund Officer at Menard Correctional Center.

**Disposition**

The Clerk is **DIRECTED** to correct Defendant Ziglier's name to Ziegger, and to substitute J. Hood, J. Phillip, and Jason Rednour for John Doe C/Os #4, #5, and #6, respectively.

**COUNT 10** is **DISMISSED** without prejudice for failure to state a claim upon which relief may be granted. **COUNTS 11 and 12** are **DISMISSED** with prejudice for failure to state a claim upon which relief may be granted.

Defendants **HUGHS** and **DAVIS** are **DISMISSED** from this action without prejudice. Defendants **HILL** and **JOHN DOE #7** are **DISMISSED** from this action with prejudice.

The Clerk of Court shall prepare for Defendants **ZIEGGER, DUNN, SHURZT, HARRINGTON, LINDENBERG, MINER, QUAND, BERDNER, STEVE, HOOD,**

**PHILLIP,** and **REDNOUR**: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the complaint, and this Memorandum and Order to each Defendant's place of employment as identified by Plaintiff. If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that Defendant, and the Court will require that Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

With respect to a Defendant who no longer can be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Service shall not be made on the Unknown Defendants (John Does #1-3) until such time as Plaintiff has identified them by name in a properly filed amended complaint. Plaintiff is **ADVISED** that it is Plaintiff's responsibility to provide the Court with the names and service addresses for these individuals.

Plaintiff shall serve upon Defendants (or upon defense counsel once an appearance is entered), a copy of every pleading or other document submitted for consideration by the Court. Plaintiff shall include with the original paper to be filed a certificate stating the date on which a true and correct copy of the document was served on Defendants or counsel. Any paper received by a district judge or magistrate judge that has not been filed with the Clerk

or that fails to include a certificate of service will be disregarded by the Court.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to a United States Magistrate Judge for further pre-trial proceedings, which shall include a determination on the pending motion for recruitment of counsel (Doc. 3).

Further, this entire matter shall be **REFERRED** to the United States Magistrate Judge for disposition, pursuant to Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *if all parties consent to such a referral.*

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under § 1915, Plaintiff will be required to pay the full amount of the costs, notwithstanding that his application to proceed *in forma pauperis* has been granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that at the time application was made under 28 U.S.C. § 1915 for leave to commence this civil action without being required to prepay fees and costs or give security for the same, the applicant and his or her attorney were deemed to have entered into a stipulation that the recovery, if any, secured in the action shall be paid to the Clerk of the Court, who shall pay therefrom all unpaid costs taxed against Plaintiff and remit the balance to Plaintiff. Local Rule 3.1(c)(1).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will

cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED: January 13, 2014**

s/ MICHAEL J. REAGAN
United States District Judge