IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| DAVID ROBERT BENTZ, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| vs. | ) | Case No. 3:13-CV-1280-NJR-DGW |
| MICHAEL A. MINER, JAY ZIEGLER, DANIEL DUNN, ROBERT SHURTZ, DONALD LINDENBERG, ERIC QUANDT, JOSHUA BERNER, JOHN HOOD, JARED PHILLIPS, JASON REDNOUR, and JACKIE STUEVE, | ) | |
| Defendants. | ) | |

# MEMORANDUM AND ORDER

**ROSENSTENGEL, District Judge:**

This matter comes before the Court on the Rule 59 Motion and Rule 50 Motion filed by Plaintiff David Robert Bentz (Doc. 136). Bentz filed this lawsuit pursuant to 42 U.S.C. § 1983, alleging a violation of his constitutional rights, on December 12, 2013 (Doc. 1). Specifically, Bentz claimed Defendant Berner spit in his face and that Defendants destroyed his clothing, bedding, and legal materials, and denied him replacement clothing, bedding, and legal materials, all in retaliation for Bentz filing lawsuits and making other complaints. Bentz also asserted that Defendant Miner used excessive force when he shoved Bentz into a steel door frame, in violation of the Eighth Amendment, and that Defendants did nothing to stop the attack or otherwise intervene.

The case was tried to a jury in March 2017. After a two-day trial, the jury found in favor of Defendants and against Bentz (Doc. 174). Judgment was entered on March 22,

2017 (Doc. 178). On April 14, 2017, Bentz filed the instant motion pursuant to Rules 50 and 59 of the Federal Rules of Civil Procedure.

I.      **Rule 59 Motion for New Trial**

Rule 59 allows the Court to grant a new trial on all or some of the issues, for any reason for which a new trial has been granted in federal court. FED. R. CIV. P. 59(a)(1)(A). The motion must be filed within 28 days of the entry of judgment. FED. R. CIV. P. 59(b). "In ruling on a motion for new trial under Rule 59(a), the Court must determine whether the jury verdict was against the weight of the evidence or if the trial was unfair to the moving party." *Purtell v. Mason*, No. 04 C 7005, 2006 WL 2037254, at *3 (N.D. Ill. July 18, 2006) (citing *Kapelanski v. Johnson*, 390 F.3d 525, 530 (7th Cir. 2004)). Federal courts will not "set aside a jury verdict if a reasonable basis exists in the record to support the verdict . . . ." *Kapelanski*, 390 F.3d at 530. In this case, Bentz seeks a new trial pursuant to Rule 59 for several reasons, each of which the Court discusses in turn.

   A.      **Default Judgment**

Bentz first claims he is entitled to relief because each Defendant testified they never read the complaint in this case and had no idea what they were being sued for until a couple of weeks before trial. Bentz argues that the answers filed by defense counsel, therefore, must have been fabricated. Because the answers were "false documents," Bentz contends, Defendants never truly answered the complaint and, thus, are in default. Bentz seeks default judgment as a result.

In response, Defendants note that they filed answers through counsel on March 11, 2014, April 16, 2014, May 5, 2014, and July 7, 2014—three years prior to trial (Docs. 39, 44, 51, 56). That Defendants did not remember, while on the stand, their involvement in

the case three years ago, does not void their properly filed answers to the complaint. Furthermore, Defendants argue that Bentz's motion pursuant to Rule 59 is not a proper motion for default judgment, and to the extent he seeks default judgment, the requirements under the Federal Rules of Civil Procedure have not been met. Rather, Rule 55 requires either a failure to appear or otherwise defend, in addition to a hearing with written notice. FED. R. CIV. P. 55. Because Defendants have appeared and litigated this case to its conclusion, default judgment would be improper.

The Court finds that Bentz's motion for default judgment, while also procedurally improper, wholly lacks merit. This is not an instance where the Defendants refused to participate in the litigation or to "otherwise defend" the lawsuit. *See* FED. R. CIV. P. 55(a). Defendants answered discovery, filed motions for summary judgment, and defended the case through a jury trial. *See Cannon v. Washington*, 321 F. App'x 501, 503 (7th Cir. 2009) (citing 10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 2682 (3d ed. 2008) (explaining that motions challenging sufficiency of pleadings are sufficient to "otherwise defend" against a lawsuit); *Rashidi v. Albright*, 818 F.Supp. 1354, 1356 (D. Nev. 1993) (concluding that filing a motion for summary judgment constitutes defense against a lawsuit for purposes of Rule 55)).

Because Defendants have not defaulted, there is no basis to enter default judgment. Furthermore, even if they had, the entry of default judgment after a trial on the merits would be improper because "[u]sing a default judgment to strip the winner of its rights, in response to non-prejudicial neglect, cannot be appropriate. It would be a

pointless windfall." *Id.* (quoting *Mommaerts v. Hartford Life & Accident Ins. Co.*, 472 F.3d 967, 968–69 (7th Cir. 2007)). Bentz is not entitled to relief on this ground.

### B. Discovery Issues

Bentz next argues he should receive a new trial because Defendants failed to disclose certain items in discovery, including written policies of the Illinois Department of Corrections ("IDOC") or Menard and the names of inmates who had call passes in East House on the date of the assault. Defendants, in response, argue that Bentz never raised these issues at trial and, therefore, they are forfeited. Further, Bentz does not cite to any specific discovery requests or motions to compel, and he provides no citations to case law or rules of civil procedure that would prohibit Defendants from testifying as to Menard's policies without providing written copies of those policies.

Under Rule 26(e), "[a] party who has made a disclosure under Rule 26(a) . . . must supplement or correct its disclosure or response . . . in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties . . . ." FED. R. CIV. P. 26(e). Additionally, under Rule 26(g), every discovery response must be signed by an attorney of record, thereby certifying—to the best of the attorney's "knowledge, information, and belief formed after reasonable inquiry"—that the response is rule-compliant. FED. R. CIV. P. 26(g). Attorney misconduct in the discovery phase, including violations of Rule 26, can warrant a new trial. *See Harrington v. City of Chicago*, No. 13 C 8277, 2016 WL 6680515, at *2 (N.D. Ill. Nov. 14, 2016) (citing *Brandt v. Vulcan, Inc.*, 30 F.3d 752, 758 (7th Cir. 1994)). A new trial is "dramatic relief,"

however, and is not warranted unless the movant demonstrates (1) attorney misconduct occurred and (2) prejudice resulted that necessitates a new trial. *Id.*

Here, Bentz has failed to show evidence of attorney misconduct or prejudice that would necessitate a new trial. Evidence of Menard's written policies on transfers, clothing, shakedowns, and property confiscation, which Defendants testified to but apparently did not produce, would not "tip the scales" in this case. Defendants testified to the policies, and although Bentz argues they each gave conflicting testimony regarding certain policies (e.g., how frequently he was entitled to receive new clothes), those inconsistencies could have been explored on cross-examination.

Bentz refers specifically to DR-503 regarding "Transfers," which presumably is IDOC's policy on Administrative Transfers, Assignment and Program Transfers, Disciplinary Transfers, and International Transfers.[1] Bentz claims this is new evidence that was not disclosed to him prior to trial. He avers that DR-503 contradicts Defendants' testimony that there is a "Transfer" policy requiring all of an inmate's property to fit in one box when transferring from one cell house to another. However, the existence of DR-503, which discusses transfers to another institution, does not preclude the existence of another IDOC policy or a policy specific to Menard, written or unwritten, that dictates how an inmate's property should be handled when he is moving to another cell. The Court fails to see how the failure to produce DR-503 prejudiced Bentz such that he is entitled to a new trial.

---

[1] The document, attached as an exhibit to Bentz's motion, appears to be one page out of a larger document and contains no information identifying the author or source.

Bentz further points the Court to a written policy he discovered in another lawsuit, which purportedly lists Defendants' job duties. Bentz argues that although each Defendant testified it is not his responsibility to ensure inmates are provided with clothing, the "Class Specification" for the role of "Correctional Officer" lists "issu[ing] clothes, provisions, tools, and other commodities to residents" as an example of a correctional officer's duties. While it is true Bentz could have used the job description to impeach Defendants, this document would not have proved Defendants retaliated against Bentz such that the jury would have rendered a verdict for him. The jury reasonably could have found that Defendants were unaware of the written "Class Specification," or that the "Illustrative Examples of Work" were simply that—examples of their job duties, but not requirements.

Finally, Bentz claims Defendants failed to provide him with a letter from Dede Short, to which Defendant Ziegler testified to receiving, as well as the names of inmates who had call passes in East House on the date of the assault, in violation of the Court's scheduling and discovery order. On the basis of this scant information, the Court declines to say whether this information should have been provided with Defendants' initial disclosures. Even if it should have been provided pursuant to Rule 26, however, Bentz did not raise these issues prior to trial, nor did he object to Defendant Ziegler's testimony regarding the letter at trial. "A motion for a new trial is not the appropriate place to raise for the first time arguments that could have been brought earlier in the proceedings." *Prod. Specialties Grp., Inc. v. Minsor Sys.*, Inc., 513 F.3d 695, 699 (7th Cir. 2008). While Defendants have a continuing duty under Rule 26(e) to supplement their

disclosures, including the names of individuals likely to have discoverable information, this is an issue that could have been raised with the Court prior to trial. Furthermore, Bentz has not developed any argument whatsoever indicating how the lack of this information prejudiced him at trial. Under these circumstances, Bentz is not entitled to a new trial.

C.  **Official Capacity**

Bentz next argues that he sued Defendants in their individual and official capacities, yet the jury was only instructed to consider Defendants' actions in their individual capacities. Because the jury never returned a verdict for Defendants in their official capacities, Bentz argues, these issues are still pending. Defendants argue that official capacity claims are only suitable for the purpose of carrying out injunctive relief, which is why Defendant Lashbrook (the Warden) remained in the case. Once the jury determined that Bentz's constitutional rights were not violated, there was no longer a surviving claim for injunctive relief.

"Official capacity suits are actions against the government entity of which the official is a part." *Sanville v. McCaughtry*, 266 F.3d 724, 732 (7th Cir. 2001) (citing *Wolf-Lillie v. Sonquist*, 699 F.2d 864, 870 (7th Cir. 1983)). A plaintiff who sues a state employee in the employee's "official capacity" is actually suing the state entity. *Springs v. Schwarz*, No. 15 C 5437, 2017 WL 4130504, at *4 (N.D. Ill. Sept. 19, 2017) (citing *Sanville*, 266 F.3d at 732-33). Therefore, "a § 1983 suit cannot be brought against a state employee in the employee's official capacity." *Id.* (citing *Rivera v. Walker*, No. 05 C 6272, 2006 WL 897743, at *2 (N.D. Ill. Mar. 30, 2006) (dismissing § 1983 claims against IDOC employees

in their official capacities); *Fox v. Ghosh*, No. 09 C 5453, 2010 WL 345899, at *5 (N.D. Ill. Jan. 26, 2010) ("Nor can a plaintiff sue government officials in their official capacity under section 1983.")).

As the Seventh Circuit in *Sanville* stated: "the official capacity claims seeking money damages from the defendants should have been dismissed on the basis that they may not be sustained under § 1983." *Sanville*, 266 F.3d at 733. The same is true here. To the extent these claims remain in this case, they are now dismissed.

### D. Weight of the Evidence

Lastly, Bentz argues that the verdict was against the weight of the evidence. He references testimony from Defendant Miner that he took Bentz's clothing bag because it was not in Bentz's property box, despite there being no policy that Bentz keep his clothing in his property box. Bentz also refers to testimony from Defendant Shurtz that Bentz submitted a slip for clothing, but it was not honored because staff did not correctly process the slip; however, Bentz claims the first correctional officer that signed the slip acknowledged he properly filed the slip. In sum, Bentz asserts that Defendants took his clothing for no reason, he submitted a clothing slip to no avail, and all the evidence and testimony supports his claims of retaliation. Defendants, in response, assert that the jury heard this evidence at trial, determined the witnesses' credibility, and came to a conclusion that favored Defendants.

In considering a motion for a new trial, a district court may assess the weight of the evidence, the credibility of the witnesses, and the comparative strength of the facts put forth at trial. *Mejia v. Cook Cty., Ill.*, 650 F.3d 631, 633 (7th Cir. 2011) (citing *Byrd v. Blue*

*Ridge Rural Elec. Coop., Inc.*, 356 U.S. 525, 540 (1958) ("The trial judge in the federal system has powers denied the judges of many States to comment on the weight of evidence and credibility of witnesses . . . ."); *United States v. Washington*, 184 F.3d 653, 658 (7th Cir. 1999) ("In considering the weight of the evidence, the court must necessarily consider the credibility of the witnesses."). If, after evaluating the evidence, the district court finds the verdict is against the manifest weight of the evidence, a new trial is appropriate. *Id.* "Jury verdicts deserve particular deference in cases with simple issues but highly disputed facts." *Willis v. Lepine*, 687 F.3d 826, 836–37 (7th Cir. 2012) (quotation omitted).

The Court agrees with Defendants that the verdict was not against the manifest weight of the evidence. The limited evidence cited by Bentz does not outweigh Defendants' testimony that their actions were not taken in retaliation for Bentz filing grievances or lawsuits. Furthermore, the Court finds that Defendants' testimony was credible. To the extent there was any conflicting testimony regarding the facts, the Court defers to the jury's determination. *See id.* at 837. Bentz is not entitled to a new trial.

## II.  Judgment as a Matter of Law

Bentz also requests judgment as a matter of law pursuant to Rule 50, presumably for the same reasons he seeks a new trial. In response, Defendants argue that Bentz did not file a written or oral motion under Rule 50 during trial; therefore, he cannot now make a renewed motion under Rule 50(b). Thus, the motion should be stricken.

Rule 50(a)(1) allows a court to enter judgment as a matter of law during trial whenever "a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue." FED. R. CIV. P.

50(a)(1); *see Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 149, 120 S. Ct. 2097, 147 L.Ed.2d 105 (2000); *Murray v. Chicago Transit Auth.*, 252 F.3d 880, 887 (7th Cir. 2001). "The standard is whether the evidence presented, combined with all reasonable inferences permissibly drawn, is legally sufficient to support the verdict when viewed in the light most favorable to the nonmovant." *Petit v. City of Chicago*, 239 F. Supp. 2d 761, 767 (N.D. Ill. 2002), aff'd, 352 F.3d 1111 (7th Cir. 2003). The court may not reweigh the evidence, resolve conflicts in the testimony against the nonmovant, or override the jury's determinations as to the credibility of witnesses. *Id.*

Rule 50(b) permits a court to order a new trial or direct the entry of judgment as a matter of law if, no later than 28 days after the entry of judgment, the movant files a renewed motion. FED. R. CIV. P. 50(b). A party cannot make a Rule 50(b) motion for judgment after trial unless it previously filed a Rule 50(a) motion for judgment as a matter of law before the case was submitted to the jury. *See Image Technical Servs., Inc. v Eastman Kodak Co.*, 125 F.3d 1195, 1212 (9th Cir 1997) ("We strictly adhere to the requirements of Rule 50(b), which prohibit a party from moving for a judgment as a matter of law after the jury's verdict unless that motion was first presented at the close of the evidence.").

The Court agrees with Defendants that Bentz forfeited his ability to bring a Rule 50 motion, having failed to bring such a motion before the case was submitted to the jury. *See Petit*, 239 F. Supp. At 767 ("Under the plain language of Rule 50(b), a Rule 50(a) motion for judgment as a matter of law must be made at the close of the evidence in order to be able to bring a post-trial Rule 50(b) motion for judgment as a matter of law.").

Accordingly, the Court denies the portion of Bentz's motion requesting judgment as a matter of law pursuant to Rule 50.

## Conclusion

The motion for new trial filed by Plaintiff David Robert Bentz pursuant to Rule 59 and Rule 50 of the Federal Rules of Civil Procedure (Doc. 186) is **DENIED**. Plaintiff's Motion for Status (Doc. 209) is **DENIED as moot.**

**IT IS SO ORDERED.**

DATED:   November 6, 2017

_____
**NANCY J. ROSENSTENGEL**
**United States District Judge**